THE GOLDEN BELT LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109207. Promulgated March 10, 1943.

*W. E. Baird, C. P. A.*, for the petitioner.
*John E. Marshall, Esq.*, for the respondent.

OPINION.

SMITH, *Judge:* This proceeding is for the redetermination of a deficiency in income tax for the calendar year 1938 in the amount of $291.71.

In its income tax return for the calendar year 1938 the petitioner claimed the deduction from gross income of $5,955.04 as interest paid to holders of debenture preferred stock. The deduction was disallowed by the respondent who held in his deficiency notice "that the payment does not represent interest paid or accrued within the year on indebtedness and is not deductible as interest or otherwise." The petitioner claims that the respondent erred in the disallowance of the deduction. The material facts have all been stipulated.

1. The petitioner is a corporation organized under the laws of Kansas, with its principal office at Manhattan. Its income tax return for the calendar year 1938 was filed with the collector of internal revenue for the district of Kansas.

2. The petitioner was incorporated on July 7, 1921, for the purpose of engaging in the retail lumber, coal, and building material business with an authorized capital of $250,000 common stock and $250,000 7 percent preferred stock. As of December 31, 1937, there were issued and outstanding $148,100 par value of common stock and $149,700

par value of 7 percent preferred stock. Petitioner's charter provides that the term for which petitioner is to exist is 50 years.

3. Petitioner's bylaws provided that preferred stock be preferred as to assets and earnings; that said stock was to be issued to bear 7 percent annual dividends, 3½ percent to be paid regularly on January 1 and July 1 following its issue; and that the stock was to be retired serially from January 1, 1925, to January 1, 1938, and that not more than $30,000 was to be issued to be retired in any one year.

4. Prior to January 1, 1938, and from January 1, 1932, petitioner was unable to meet its dividend requirements on its 7 percent preferred stock.

5. Petitioner's board of directors held a meeting on May 24, 1938. Pertinent portions of the minutes of that meeting are as follows:

At our January meeting some steps were taken toward a reissue of our preferred stock. We have been considering the issue of debenture preferred stock to replace the preferred stock now outstanding according to agreement of the preferred stockholders. This simply means a stock that is guaranteed both as to principal and interest.

The whole matter was submitted to the legal department of the Commerce Trust Company, and the wording of the new stock must acknowledge the priority of bank loans and current accounts payable. A draft submitted to the legal department of the Commerce Trust Company was approved with the following comment:

"While the following clause therein—'current accounts payable are superior to both principal and interest of the debenture preferred stock' may cover all types of obligations to banks, to absolutely set the matter at rest, I think it preferable and desirable to safeguard the interests of banks lending money, by amending this clause to read as follows: Current accounts payable, bills payable and all obligations to banks for borrowed money shall be superior to, and entitled to priority in payment over the debenture preferred stock both as to principal and interest."

A motion was made by Mr. Wharton and seconded by Dr. Willard:

"Resolved, That the officers be instructed to issue debenture stock in exchange for the preferred stock now held by the stockholders, the debentures to bear 4% interest per annum and contain all stipulations and provisions noted in the body of the certificates."

6. As of January 1, 1938, the holders of the 7 percent preferred stock exchanged such stock for debenture preferred stock on a share for share basis. Certificates of the 7 percent preferred stock evidence on their face that the petitioner has a capital stock of $500,000 consisting of $250,000 common stock and $250,000 preferred stock. The certificates read in material part as follows:

THIS IS TO CERTIFY, THAT _____ is the owner of ____ Shares of ONE HUNDRED DOLLARS each of the preferred stock of THE GOLDEN BELT LUMBER Co., fully paid and non-assessable, and transferable only on the books of the corporation by the holder hereof in person or by attorney, upon the surrender of this certificate properly endorsed.

The holder of this stock shall receive a preferential dividend of seven per cent per annum, payable semi-annually on January and July first of each year, after

the date of issuance, to be paid out of the net earnings and undivided surplus of the corporation, and this certificate shall stand as a preferred claim against the assets in case of dissolution or liquidation.

The company reserves the right to call and retire this stock without notice to the holder by paying a two per cent premium in addition to par and accumulated earnings to date called.

The company guarantees this stock free from local, State, and normal Federal income tax to the holder.

This stock does not entitle the holder to vote, nor to participate in the earnings beyond its fixed annual dividend of seven per cent.

This Certificate of Stock matures and will be retired at par on January 1st, 19___, and is renewable only at the option of the company on or after that date.

Certificates of the debenture preferred stock likewise show on their face that petitioner has a capital stock of $500,000 divided into common stock $250,000 and debenture preferred $250,000. The certificates read in material part as follows:

THIS IS TO CERTIFY, THAT THE GOLDEN BELT LUMBER COMPANY acknowledges itself indebted to _____ in the sum of _____ DOLLARS, payable at the expiration of the corporate existence of the corporation, or immediately in the event of the sale or liquidation of the corporate assets in bulk.

The company reserves the right to pay any holder of the debenture preferred stock par and accrued interest for the surrender to the company of his stock certificate, properly endorsed. The stock may be called on thirty days' notice to the holder.

The obligation of the corporation is represented by ____ shares of debenture preferred stock, each of the par value of one hundred dollars.

The company will pay four per cent interest per annum on the debenture preferred stock, payable semi-annually on July and January first each year.

Should the company fail to pay, the interest will be cumulative to the credit of the debenture preferred stockholders, and suit for recovery may be brought after three years of default.

Current accounts payable, bills payable, and all obligations to banks for borrowed money shall be superior to, and entitled to priority in payment over, the debenture preferred stock both as to principal and interest.

Common stock is junior to the debenture preferred stock.

The payment of the interest on the debenture preferred stock is an obligation and is not dependent on any action of the board of directors, but is a valid claim established by the terms of this certificate.

7. During the calendar year 1938 petitioner paid $5,955.04 to the holders of the debenture preferred stock, which it deducted in its income and excess profits tax return for 1938 as interest paid on indebtedness. The deduction was disallowed by the respondent in the determination of the deficiency herein.

8. The petitioner's income tax return for 1938 shows that it had capital stock outstanding at the close of the year of $146,500 debenture preferred stock and $148,100 common stock. Its capital stock tax return filed for the year ended June 30, 1938, gives the declared value of its capital stock as $300,000 and shows as the capital stock outstanding 1,497 shares of preferred stock and 1,481 shares of common stock.

The only question in issue in this proceeding is whether the amount of $5,955.04 which petitioner paid on its "debenture preferred stock" in 1938 is deductible under section 23 (b) as interest paid on indebtedness. If it appears from a consideration of all of the facts that the debenture preferred shares evidenced an indebtedness of petitioner, the amount paid on such indebtedness was interest. On the other hand, if they were preferred shares, evidencing an investment in the company, the payments were dividend distributions. *Jones Syndicate* v. *Commissioner* (C. C. A., 7th Cir.), 23 Fed. (2d) 833; *Commissioner* v. *O. P. P. Holding Corporation* (C. C. A., 2d Cir.), 76 Fed. (2d) 11; *Commissioner* v. *Proctor Shop, Inc.* (C. C. A., 9th Cir.), 82 Fed. (2d) 792; *Jewel Tea Co.* v. *United States* (C. C. A., 2d Cir.), 90 Fed. (2d) 451; *Commissioner* v. *Schmoll Fils Associated, Inc.* (C. C. A., 2d Cir.), 110 Fed. (2d) 611; *Brown-Rogers-Dixon Co.* v. *Commissioner* (C. C. A., 4th Cir.), 122 Fed. (2d) 347, affirming a memorandum opinion of the Board; *John Kelley Co.*, 1 T. C. 457.

In *Jones Syndicate* v. *Commissioner*, *supra*, where the taxpayer issued its first preferred shares as a mere expedient to secure a loan at a usurious rate of interest, it was held that the monthly payments made to the holders were interest rather than dividends. The shares had a definite due date and, upon liquidation, were preferred over all other classes of stock, both as to principal and interest.

In *Commissioner* v. *O. P. P. Holding Corporation*, *supra*, the taxpayer in 1929 issued its "debenture bonds" in payment for the assets of another corporation. The bonds had a definite maturity date, June 30, 1934, and both principal and interest were payable out of either earnings or assets, subordinate only to the claims of general creditors. In holding that the payments made on the debenture bonds were interest, the court said: "The fact that ultimately he [the debenture bondholder] must be paid a definite sum at a fixed time marks his relationship to the corporation as that of creditor rather than shareholder." Earlier cases in which the holders of securities were to be paid out of earnings only were distinguished on that ground.

In *Jewel Tea Co.* v. *United States*, *supra*, the United States Circuit Court of Appeals for the Second Circuit, which had also decided the *O. P. P. Holding Corporation* case, *supra*, held that premiums paid in the redemption of preferred shares were not interest payments where the shares had no fixed maturity date and were redeemable out of surplus only. The court said in its opinion:

\* \* \* Conceivably there may be preferred shares going by the name of bonds, and bonds going by the name of preferred shares. It is not always easy to tell which are which, for securities can take many forms; and it is hazardous to try to find moulds into which all arrangements can certainly be poured. But we may say that at least those are not creditors, who cannot withdraw from the venture without the consent of the rest, demanding a fixed sum at some period set in advance. In *Commissioner* v. *O. P. P. Holding Corpo-*

*ration* (C. C. A.) 76 F. (2d) 11, the taxpayer had been allowed a deduction arising from the purchase of what went by the name of debenture bonds. These were subordinate to the claims of all other creditors, and interest upon them could be suspended by the company, as is commonly the case, though it was then cumulated. On the other hand they were prior, both as to principal and interest to the shareholders, preferred or common, and if there had been nothing more, we might have treated them as shares. But they contained a provision which made them payable at a fixed time, when their holders could demand their money, whether the venture was successful or not. That we thought kept them bonds, as they were called, and the deduction could be "recognized." *Arthur R. Jones Syndicate* v. *Commissioner*, 23 F. (2d) 833 (C. C. A. 7) ; *Commissioner* v. *Proctor Shop, Inc.*, 82 F. (2d) 792 (C. C. A. 9).

In *Commissioner* v. *Schmoll Fils Associated, Inc.*, *supra*, payments made on nonmaturing debentures issued under a refinancing plan to former preferred stockholders, bearing 7 percent cumulative interest payable semiannually out of profits, redeemable at the company's option, or upon liquidation, and subordinate to "any and all amounts owing to any bank or banker," were held not to be interest payments. The court said, after referring to its earlier opinions in the *O. P. P. Holding Corporation* and *Jewel Tea Co.*, cases, *supra*, that:

It is not necessary to hold that the absence of a maturity date if taken alone would prevent a document from representing an "indebtedness" as that word is used in Section 23 (b) of the Revenue Acts of 1932 and 1934 or would invariably preclude the return from investments evidenced by the debentures from being treated as "interest." But here the absence of a maturity date, the obligation to pay income from net earnings and the subordination of the debentures to the rights of bank creditors render the payments more like dividends than interest and the securities like preferred stock rather than bonds.

In *Brown-Rogers-Dixson Co.* v. *Commissioner*, *supra*, the so-called interest payments made on "debenture preferred stock" bearing 8 percent interest payable annually without restriction as to earnings, subordinate to bank creditors but preferred over other stockholders, and payable as to principal "at the expiration of the corporate existence of the corporation," were held to be dividends and not interest.

The facts in the *Brown-Rogers-Dixson Co.* case are almost identical with those in the instant case. In both cases there was "debenture preferred stock" issued in exchange for outstanding preferred stock, payable out of earnings or assets, subordinate to bank creditors, and payable at the expiration of the corporate existence. The court found in the *Brown-Rogers-Dixson Co.* case, *supra*, that the shares had no fixed maturity date and said that "It has been repeatedly held that one of the fundamental characteristics of a debt is a definite determinable date on which the principal falls due," citing *Commissioner* v. *Schmoll Fils Associated, Inc.*, *supra*, and other cases.

The only material point of distinction between the *Schmoll Fils Associated, Inc.*, case and the instant case is that here there was no provision that either interest or principal should be paid out of surplus only. We do not think that the source of the funds from which

the obligation ultimately is to be paid alone determines the character of the obligation.

Our basic question here is of broader scope. It is a question of fact to be determined from all of the evidence. As said in *John Kelley Co., supra:* "In some cases the determining characteristic has been one factor, while in other cases it has been another. No one factor is necessarily controlling."

It is significant that in the *John Kelley Co.* case, *supra*, the payments on the "20 year 8% income debentures" were held deductible as interest, although they were payable out of earnings only. That fact, we said, was not in itself decisive.

Apparently all of the parties here regarded the debenture preferred stockholders as stockholders rather than as creditors of the company. In the first place the new debenture preferred shares were issued in exchange, share for share, for old preferred shares and no new capital was paid into or lent to the company. The new shares thus evidenced an investment in the company rather than a loan to the company. The authorizing resolution refers to "a reissue of our preferred stock," and explains that debenture preferred stock "simply means a stock that is guaranteed both as to principal and interest." Petitioner treated the debenture preferred stock as a part of its capital structure in its income tax and capital stock tax returns.

Upon consideration of all of the facts, we are of opinion that petitioner's debenture preferred stock represented an investment in the company rather than an indebtedness of the company and that the payments made thereon are not deductible as interest paid on indebtedness.

*Decision will be entered for the respondent.*