The Briggs Company v. Commissioner.
Briggs Co. v. Commissioner
Docket No. 6582.
United States Tax Court
1946 Tax Ct. Memo LEXIS 194; 5 T.C.M. (CCH) 366; T.C.M. (RIA) 46109; May 14, 1946
Thomas J. Bailey, Esq., 1102 Olds Tower, Lansing 8, Mich., for the petitioner. Clarence E. Price, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent has determined deficiencies in petitioner's income and excess profits tax liability for the years 1940 to 1942, inclusive, as follows: Excess Profits
Income Tax
Tax
1940
$ 729.80
1941
173.23
$3,095.99
1942
1,023.95
Petitioner having conceded certain adjustments, the only question remaining is whether certain securities issued by petitioner created an indebtedness on account of which petitioner paid deductible interest or whether such securities constituted preferred stock on account of which petitioner paid non-deductible dividends. Petitioner filed its *195 returns for the taxable years with the collector of internal revenue for the Eastern District of Michigan. The record consists of a stipulation of facts and exhibits. The facts, as stipulated, are so found. Other findings are based on the exhibits. Findings of Fact Petitioner is a Michigan corporation with its principal office at 400-406 East Michigan Avenue, Lansing, Michigan. It was organized in 1907 for the purpose of "the buying and selling of hay, grain, building supplies and other like commodities and merchandise". On August 12, 1921, petitioner amended its Articles of Association. This amendment provided in part as follows: The Capital stock of the Corporation is the sum of $400,000.00, of which $140,000.00 shall be Common Stock and $260,000.00 shall be Preferred Stock. The number of shares into which the Capital Stock is divided is 40,000 shares of the par value of $10.00 each. The Preferred Stock shall be subject to redemption at par on the first day of January A.D. 1935 and the holder shall be entitled to a dividend of 8 per cent per annum, payable quarterly on the second days of January, April, July and October, which shall be cumulative and payable before any *196 dividend shall be set apart or paid on the Common Stock. The Preferred Stockholers shall not be entitled to vote for directors. The Preferred Stock shall be preferred, both as to dividends and assets. This amendment also provided for the establishment and maintenance of a preferred stock redemption fund equal to seven per cent of the total amount of preferred stock issued and outstanding. At the option of preferred stockholders, on proper application, this fund was available for annual redemption of preferred stock. It also provided that: If the Company should fail for a period of thirty days to pay any dividends due on Preferred Stock, or maintain a sound ratio of quick assets to its current liabilities or shall fail to provide sufficient cash to pay its Preferred Stock Redemption applications when due, or shall fail to cumulate sufficient cash surplus before paying cash dividends on the Common Stock, then in such case or either of them, the Preferred Stock issued and outstanding shall have full voting rights and privileges with the Common Stock. This amendment stated that the total amount of common stock paid-in in cash was $116,200, and the amount of preferred stock actually *197 paid-in in property was $181,000. By further amendment to petitioner's Articles of Association, effective January 2, 1929, all the common par value stock previously issued was surrendered and cancelled and no par common stock was issued in lieu thereof, share for share. On January 27, 1937, pursuant to the Michigan Corporation Code and because of the imminent expiration of the corporate term, petitioner filed "Articles of Incorporation Extending Corporate Term." By these articles, petitioner's capital structure retained the 14,000 common no par stock created by the 1929 amendment. The 26,000 preferred shares authorized by the 1921 amendment were reduced in number to 11,000 authorized shares but otherwise retained all their former attributes. These articles also authorized 14,000 shares of common stock with a par value of $10 a share. These articles stated that of the 11,000 authorized shares of preferred stock, 8,529 were outstanding; of the 14,000 authorized shares of common no par value stock 10,295 shares were outstanding, and of the 14,000 authorized shares of common $10 par stock no shares were outstanding. The paid-in capital of the company at that time was stated to be *198 in the amount of $188,240. Petitioner defaulted in the payment of dividends on its preferred stock in the last quarter of 1927 and continuously thereafter. On January 1, 1935, at which time the preferred stock was subject to redemption, petitioner defaulted with respect to the matured principal of such stock. Consequently, under the terms of petitioner's charter, the preferred stockholders had equal voting privileges with the common stockholders from 1927 and thereafter. Petitioner's liability on its outstanding preferred stock as of December 31, 1938 and 1939 was as follows: 1938
1939
Principal
$85,290.00
$74,290.00
Dividends
67,193.60
73,136.80
Total
$152,483.60
$147,426.80
Prior to September 30, 1939, a committee of stockholders was appointed "to prepare and submit recommendations for improving the capital structure of the company and for amending its Articles of Incorporation and By-laws to make such changes effective." The recommendations of this committee were contained in a notice of a special stockholders' meeting to be held on September 30, 1939. This plan proposed that holders of preferred stock surrender such stock and the accumulated *199 dividends thereon to petitioner for cancellation and retirement and accept in payment thereof debentures and common no par stock. With respect to the proposed debentures the plan provided in part as follows: DEBENTURES Debentures to be authorized and issued to each holder of Preferred Stock in payment and retirement thereof, in a principal sum equal to the Par Value of Preferred Stock, such Debentures to embody terms and conditions as follows: 1. The principal and interest of such Debentures shall have priority over the Common Non-Par stock in the liquidation of assets and after payment of the general creditors of the Corporation; and 2. No dividends shall be paid upon Common Non-Par Stock until all Debentures, with interest thereon, have been paid and fully retired; and 3. Such Debentures shall bear interest at the rate of Five (5%) per cent per annum, payable as the Board of Directors shall order, and on or before December 30th of each year; provided, however that Five (5%) per cent interest upon such Debentures shall be paid on or before December 30th, 1940; but if the plan of re-organization presented herein shall become effective on or before December 1st, 1939, then *200 One-half (1/2) of such first installment of annual interest shall be paid on or before July 1st, 1940; 4. The principal of such Debentures shall be paid to the holders thereof as follows: In any year after 1939, if and when the cash surplus of the Company exceeds the sum of Twenty-five Thousand ($25,000.00) Dollars, or such lesser sum as the Board may deem necessary for working capital, the Board of Directors shall cause written or published notice to be given to Debenture holders, informing them of the surplus available for distribution, which notice shall contain a call for tenders or offers of such Debentures to the Company for retirement. Thereupon the holders of such Debentures may file in the office of the Company, their several written offers to sell and retire their Debenture holdings and the price asked therefor in each instance (not including interest thereon), and the Board of Directors shall thereupon order the purchase of the Debentures offered for retirement at the lowest price or figure to the extent that the available surplus will permit; and the Debentures so acquired by the Company, shall be surrendered, cancelled and retired. In the absence of such tenders *201 by Debenture holders, the Board of Directors may pay and retire Debentures to be selected by lot, to the extent that the available surplus will permit; the Debentures to be so retired, to be selected by lot pursuant to a plan to be provided by Resolution or By-law. In addition to the debentures, stockholders were to receive one share of no par common stock for each share of preferred stock surrendered "the purpose being that each debenture holder shall have the privilege of participating in and voting at meetings of stockholders." The plan provided that no debentures would be issued and no preferred stock cancelled until 90 per cent of the preferred stockholders and 90 per cent of the no par common stockholders had approved the plan. It was also proposed that the authorized no par common stock be increased as necessary to the plan and that when the preferred stock was fully retired it be eliminated by amendment from the charter. This plan was finally adopted by the stockholders on December 23, 1939. The resolutions adopted by the stockholders incident to approving such plan are as follows: FIRST RESOLUTION BE IT RESOLVED, That the authorized Common Par Value Stock, of which *202 none is outstanding, be and the same is hereby eliminated from the capital structure of the Corporation, and that the authorized Non-Par Value Common Stock be increased from 14,000 shares to 18,000 shares, and that Article IV of the Articles of Incorporation be and the same is hereby amended to be and read, as follows: "ARTICLE IV. The authorized Capital Stock is: 1. Preferred
11,000 shares
Par Value
$10.00; and
Common
No Shares
Par Value
None
2. Shares without Par Value: Preferred
None
Common
18,000 Shares
3. The following is a description of each class of stock of the Corporation with the voting powers, preferences and rights and the qualifications, limitations or restrictions thereof; Preferred Stock is subject to redemption at par on the 1st day of January, A.D. 1935, and the holder is entitled to a dividend of Eight (8%) per annum, payable quarterly, which is cumulative and payable before any dividend may be set apart or paid on Non-Par Value Common Stock. Preferred Stock has no voting rights except as provided by Statute. Non-Par Value Stock has full voting rights and is entitled to participate in dividends and assets of the Corporation equally, *203 share for share, after the outstanding Preferred Stock or any Debentures which may be issued in payment and retirement thereof, together with stipulated interest thereon, shall be fully paid and retired. The value placed upon Non-Par Value Common Stock for the purpose of sale or exchange, is One and 00/100 ($1.00) Dollars per share. The amount of paid-in capital of this Corporation is One Hundred Eighty-eight thousand [thousands] ($188,240.00) Dollars." SECOND RESOLUTION BE IT RESOLVED, That the officers of the Corporation, subject to the directions of the Board of Directors thereof, are hereby authorized and directed to certify and record the Amendment to the Articles of Incorporation heretofore adopted by this meeting; and further, that pursuant to the plan of Re-Organization heretofore approved and adopted by the Stockholders, the officers of the Corporation are authorized and directed to prepare Debentures of the Corporation embodying the terms, conditions, restrictions and limitations of such Debentures as provided in said plan of Re-Organization. And further, that the officers of the Corporation are hereby authorized and directed to make application for and procure *204 the authorization of the Michigan Corporation and Securities Commission for the issue and delivery by the Corporation to the Preferred Stockholders thereof, of such Debentures and Non-Par Value Stock in payment and retirement of the principal of the outstanding Preferred Stock as provided for in said plan of Re-Organization. BE IT FURTHER RESOLVED, That upon such authorization of the Michigan Corporation and Securities Commission, the officers of the Corporation are authorized to accept from the holders of the outstanding Preferred Stock, respectively, the surrender of their respective Preferred Stock Certificates, which shall thereupon become cancelled, redeemed and retired; and further, that the officers of the Corporation are also authorized and directed to accept from the holders of said Preferred Stock their donations of the accumulated interest thereon to the surplus of the Corporation by written assignments which shall be approved in substance and form by the Board of Directors. THIRD RESOLUTION BE IT RESOLVED, That the Debentures provided for in the plan of Re-Organization heretofore adopted by the Stockholders, shall not be sold, negotiated, or in any manner disposed *205 of for any purpose, except for the payment and retirement of the outstanding Preferred Stock. Pursuant to the first resolution quoted above, petitioner's articles of incorporation were amended effective January 31, 1940. After this date petitioner proceeded to retire the preferred stock according to plan. By July 1, 1940, there remained only $2,700 par value preferred shares outstanding. By December 31, 1943, all the preferred shares had been retired except for 60 shares having a par value of $600. The debentures issued under the plan provided on their face as follows: THE BRIGGS COMPANY
No. 95
Lansing, Michigan
$ DEBENTURE THE BRIGGS COMPANY, a Michigan corporation, (hereinafter called the "Company") acknowledges its indebtedness to for the sum of Dollars ( $ ) which it hereby promises to pay with interest at the rate of Five Per Cent per annum under terms and conditions as follows: This Debenture is one of a series aggregating the sum of $74,290.00 authorized to be issued solely for the retirement of the Preferred Stock of The Briggs Company, and those so issued rank pari passu. Principal and interest of such Debentures have priority over Non-Par *206 Common Stock in liquidation of assets after payment of the claims of general creditors of the Company. No dividends are payable on Non-Par Common Stock until all Debentures of said series, with interest, are paid and retired. Said Debentures bear interest computed from January 1, 1940, at Five Per Cent per annum payable on or before December 30th of each year; but one-half of the 1940 interest shall be paid on or before July 1, 1940. The principal of said Debentures shall be paid in installments as the Board of Directors of the Company shall order, and as follows: When the cash surplus of the Company exceeds the sum of $25,000.00 (or such lesser sum as said Board may deem necessary for working capital), written or published notice stating the amount of surplus available for distribution upon the Debentures shall be given to holders thereof, such notice to include a call for tender of Debentures for retirement. Upon such notice and call, Debenture holders may file in the office of the Company their written offers to surrender and retire their Debentures and the price (not including interest) asked therefor in each instance. The Board shall then order the purchase and retirement *207 of Debentures so offered at the lowest price to the extent that the available surplus will permit. In the event that no tender shall be made the Board of Directors may retire Debentures to be selected by lot, pursuant to a plan provided by its Resolution or By-law, to the extent that the available surplus will permit. Said Debentures may be sold, assigned, and transferred on the books of the Company, but the purchaser or assignee should ascertain the book value thereof in any instance at the office of the Company before payment of consideration. IN WITNESS WHEREOF, The Briggs Company has caused this Debenture to be signed by its authorized officers and to be sealed with its corporate seal, this day of , 19 . / Secretary / President In carrying out the plan, each preferred stockholder on surrendering his stock to petitioner signed and delivered a memorandum providing in part as follows: The undersigned holding shares of the Preferred Stock of The Briggs Company, in consideration of the making of like contributions by other Preferred Stockholders hereof, hereby donate - and contribute - to the surplus of the said Company all accrued dividends on said Preferred Stock. Petitioner *208 has made payments designated as interest on account of the debentures issued pursuant to the plan as follows: 1940
$3,714.50
1941
3,720.00
1942
3,698.73
The minutes of the meetings of the board of directors for these years contain no record of any action by the board of directors regarding such payments. Debentures have been retired by petitioner in the following face amounts: 1942
$ 513.00
1943
6,390.00
1945
5,330.00
Petitioner has consistently referred to the debentures as such and the payments thereon as interest. In its various returns and reports the debentures have never been included or listed as a capital stock liability. Since January 1, 1940, holders of the debentures have sold and transferred such debentures separate and apart from the common no par stock, and vice versa. Petitioner, in its Federal tax returns for 1940, 1941 and 1942, deducted as interest expense the respective amounts of $3,714.50, $3,720, and $3,698.73, representing the alleged interest payments made in those years on account of the debentures. Respondent has disallowed these amounts as deductions and has determined that these amounts represent dividends *209 rather than interest. The debentures in question did not create a debtor-creditor relationship between petitioner and its debenture holders. Opinion The only question for our decision in this case is whether the debentures issued by petitioner constitute an indebtedness or whether they are essentially in the nature of preferred stock. If they constitute an indebtedness, as petitioner contends, the interest payments thereon are deductible business expenses under section 23 (b) of the Internal Revenue Code. [1] If they are essentially in the nature of preferred stock, as respondent contends, the payments thereon constitute dividends and are not deductible. [2] After having carefully considered all the facts and circumstances of the instant case we have concluded that the debentures are essentially in the nature of a stock interest. *210 A fixed maturity date is usually considered as an essential characteristic of a debt. John Wanamaker Philadelphia v. Commissioner, 139 Fed. (2d) 644; First Mortgage Corp. of Philadelphia v. Commissioner, 135 Fed. (2d) 121; Haffenreffer Brewing Co. v. Commissioner, 116 Fed. (2d) 465; Commissioner v. Schmoll Fils Associated, Inc., 110 Fed. (2d) 611; United States v. South Georgia Ry. Co., 107 Fed. (2d) 3; Jewel Tea Co., Inc. v. United States, 90 Fed. (2d) 451; Golden Belt Lumber Co., 1 T.C. 741; Green Bay & Western Railroad Co., 3 T.C. 372. This characteristic is lacking in the instant case. Petitioner argues, however, that although no maturity date is specified, the face of the debenture acknowledges an indebtedness. From this fact petitioner contends that, under general principles of contract law, the acknowledged amount of indebtedness could be recovered within a reasonable time. If it were not for other provisions of the debentures this argument might deserve consideration. But the terms of the debentures so qualify the manner of payment that, in our opinion, no action to recover *211 principal within a reasonable time could be maintained. It is provided in part that: The principal of said Debentures shall be paid in installments as the Board of Directors of the Company shall order, and as follows: When the cash surplus of the Company exceeds the sum of $25,000.00 (or such lesser sum as said Board may deem necessary for working capital), written or published notice stating the amount of surplus available for distribution upon the Debentures shall be given to holders thereof, such notice to include a call for tender of Debentures for retirement. Upon such notice and call, Debenture holders may file in the office of Company their written offers to surrender and retire their Debentures and the price (not including interest) asked therefor in each instance. The Board shall then order the purchase and retirement of Debentures so offered at the lowest price to the extent that the available surplus will permit. In the event that no tender shall be made the Board of Directors may retire Debentures to be selected by lot, pursuant to a plan provided by its Resolution or By-law, to the extent that the available surplus will permit. (Italics supplied.) These provisions *212 not only limit the source of payment but also qualify the amount to be paid. Payment is limited to surplus in excess of $25,000. The amount to be paid depends on what the lowest offers are. In any event the procedure is optional with the holders and optional with the board. Under these circumstances, we do not think petitioner's contention for a fixed maturity date based on general contract law is plausible. Furthermore, we think these same provisions not only preclude a definite maturity date but also prevent the existence of an unconditional obligation to pay an amount certain, which is customarily considered an attribute of debt. Redemption procedures, similar to those employed in the instant case, when optional or when qualified with respect to source of payment, are usually not considered equivalent to a fixed maturity date or as constituting an unconditional obligation. First Mortgage Corp. of Philadelphia v. Commissioner, supra; Haffenreffer Brewing Co. v. Commissioner, supra; Commissioner v. Schmoll Fils Associated, Inc., supra; United States v. South Georgia Ry. Co., supra; Jewel Tea Co. Inc. v. United States, supra; *213 Finance & Investment Corp. v. Burnet, 57 Fed. (2d) 444; Verifine Dairy Products Corp. of Sheboygan, Inc., 3 T.C. 269; Cf. Commissioner v. Proctor Shop, Inc., 82 Fed. (2d) 792. It should also be noted that there is no provision for acceleration or other remedy in the event of default. First Mortgage Corp. of Philadelphia v. Commissioner, supra; 1432 Broadway Corp., 4 T.C. 1158, 1166. The debentures are unsecured. 1432 Broadway Corp., supra; Charles L. Huisking & Co., 4 T.C. 595. On liquidation the debentures, by their terms, are junior to general creditors. Such junior position has frequently been considered as an indicia of stock rather than an indebtedness. John Wanamaker Philadelphia v. Commissioner, supra; First Mortgage Corp. of Philadelphia v. Commissioner, supra; Commissioner v. Meridian & Thirteenth Realty Co., 132 Fed. (2d) 182; Commissioner v. Schmoll Fils Associated, Inc., supra; Commissioner v. O.P.P. Holding Corp., 76 Fed. (2d) 11; Finance & Investment Co. v. Burnet, supra; 1432 Broadway Corp., supra; Green Bay & Western Railroad Co., supra; *214 Verifine Dairy Products Corp. of Sheboygan, Inc., supra.Under all these circumstances we think the interests created by the terms of the debentures more nearly approximate proprietary interests subject to the risks of the business than an indebtedness. We are not unmindful of the fact that nomenclature, although not conclusive, is not to be ignored. Jewel Tea Co. Inc. v. United States, supra; Commissioner v. O. P. P. Holding Corp., supra; 1432 Broadway Corp., supra; Charles L. Huisking & Co., supra. It is true that the records and reports of petitioner consistently refer to the debentures as debentures and to payments thereon as interest. It is also true that petitioner did not carry or report these debentures as constituting capital stock. While we think that nomenclature and consistent treatment is sometimes of importance as indicating intent, we also think in some instances these same factors tend to obscure or disguise the underlying purposes. In the instant case, the stated purpose of issuing the debentures was to improve petitioner's financial position. The procedure adopted eliminated accrued dividends on preferred stock and substituted *215 debentures for the preferred stock in a like face amount. If the debentures were intended to constitute indebtedness then petitioner eliminated a claim of $73,136.80, representing accrued dividends on the preferred stock, and created a debt of $74,290, representing the face value of the outstanding preferred shares to be converted into debentures. This is a strange procedure for improving financial position. It is also significant, we think, that if the debentures were intended to constitute indebtedness then petitioner's capital stock at the end of 1940 amounted to $17,624 as against an indebtedness of $74,290. These are the figures reported by petitioner in its 1940 income tax return. Thus, petitioner by issuing debentures achieved a ratio of debt to capital stock of approximately 4 to 1 which in all probability would not be favorably considered by prospective creditors. From these considerations we think the nomenclature adopted belies the real intent. Furthermore, we think the fact that no new capital was acquired, that voting shares were included in the distribution, that the debentures were unsecured and junior to general creditors, all tend to contradict any idea of debt which *216 might otherwise be suggested by the terminology adopted. We hold that the debentures in question do not constitute an indebtedness but are essentially in the nature of preferred stock interests. It follows that respondent did not err in disallowing as a business expense the alleged interest payments which were in fact dividends. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(b) Interest. - All interest paid or accrued within the taxable year on indebtedness, * * * ↩
2. REGULATIONS 103. Sec. 19.23(b)-1. Interest. - Interest paid or accrued within the year on indebtedness may be deducted from gross income, * * *
* * * So-called interest on preferred stock, which is in reality a dividend thereon, cannot be deducted in computing net income. * * *↩