OPINION. Oppee, Judge: While the specified factual distinction[1] between John Kelley Co. v. Commissioner and Talbot Mills v. Commissioner, 326 U. S. 521, furnishes little assistance in determining whether the “debenture” in issue represents an indebtedness and the interest carried by it is hence deductible, two other factors not present in those cases but alluded to by the Supreme Court in the same opinion seem to indicate that it is not. That Court takes occasion to issue what we can not but view as a warning when it notes that “As material amounts of capital were invested in stock, we need not consider the effect of extreme situations such as nominal stock investments and an obviously excessive debt structure.” (321 U. S. at 526). The necessity excluded there we can not now avoid. Dealing with property having a stipulated value of “at least $250,200,” the financing selected was to create a clearly “nominal” figure of $200 in the common stock and “an obviously excessive debt structure” of $250,000 in the debenture. This evokes a factor evidently regarded as significant by the Supreme Court, which, unlike either the Talbot Mills or Kelley Co. cases, tends to justify the respondent’s treatment. The maturity date of the present debenture also constitutes an element distinguishing it from Kelley Co. The latter is characterized in the Supreme Court opinion as “a definite maturity date in the reasonable future.” (321U. S. at p. 526.) But we are dealing here with a 99-year obligation issued by a corporation whose principal asset is urged by petitioner, in a different connection, as having an anticipated life at the time of acquisition of less than a third of that span. It must be seriously doubtful, to say the least, whether such a maturity date, definite though it may be, can be thought of as falling “in the reasonable future.” But there is, in addition, a compelling reason why this security should be treated as comparable to stock rather than indebtedness. Subsequent to its decisions in the Talbot Mills and Kelley Co. cases, this Court decided Broadway Corporation, 4 T. C. 1158, which was, after the final affirmance of those cases, itself affirmed (C. C. A., 2d Cir.), 160 Fed. (2d) 885. We think it necessary to treat the 1⅛82 Broadway Corporation case, in many respects comparable to this one, as controlling. As in that case: * ⅜ * No loan was made to the corporation by the owners, either of property or of money *"" * *. The entire contribution was a capital contribution rather than a loan * * *. The distribution of the rent income, whether called interest or principal on debentures or dividends on shares, would go to the same persons * * *. * * * these securities are more nearly like preferred stock than indebtedness * * *. It is idle to argue that the debentures were transferable and must therefore be judged separately from the shares, for they were issued to the same persons as held the shares, and in the same proportions, and they were not in fact transferred * * * Interest is payment for the use of another’s money which has been borrowed, but it cannot be applied to this corporation’s payment or accruals, since no principal amount had been borrowed from the debenture holders and it was not paying for the use of money, [pp. 1165,1166.] Except taxwise, every advantage said to have been sought from the security in the proceeding at bar could have been attained through an equivalent issue of preferred stock. See Ticker Publishing Co., 46 B. T. A. 399. In all but name this was redeemable preferred stock and nomenclature is not controlling. Charles L. Huisking & Co., 4 T. C. 595. It was unsecured and subordinate to all creditors. Commissioner v. Schmoll Fils Associated, Inc. (C. C. A., 2d Cir.), 110 Fed. (2d) 611. It was callable by petitioner, but, due to the extreme length of its term, not collectible by the holder in effect, until dissolution, if at all. See Golden Belt Lumber Co., 1 T. C. 741. Its payment as to both current and accumulated interest depended not only on available profits, but in reality on the decision of the directors not to create preferential reserves. Cf. Ticker Publishing Co., supra. In fact, this decision by the directors as to payment of interest was virtually comparable to that made in declaring a dividend on preferred stock. No creditor dealing at arm’s length, except in the last extremity of obvious uncollectibility, would have consented to accept such a means of payment. In a prosperous and solvent corporation like petitioner, the instrument in question was in every material respect the equivalent of an equity security, not the evidence of a debt. Mullin Building Corporation, 9 T. C. 350. We can not escape the compulsion of the casés mentioned to characterize these payments as the distribution of profits, rather than interest on indebtedness. On this issue the deficiency is upheld. On the second issue, respondent is now “willing to concede * * * that some depreciation is allowable. Charles Bertram Currier, et ux. (1946), 7 T. C. 980 * * *.” The parties being in agreement as to basis, the dispute is as to the rate. We are not satisfied that useful life was as short as estimated by petitioner’s witness, but, as appears from our findings, we regard a 50-year life, or 2 per cent rate, as appropriate. Bureau of Internal Revenue, Bulletin F. To this extent, the deficiency is disapproved. The third issue involves the abnormality for excess profits tax purposes of a payment received by petitioner upon cancellation by its tenant of a lease with a subtenant. Petitioner’s consent was required and the payment in question was the price of that consent. The precise question is the applicability of section 721 (a) (2) (E), referring to “abnormal income” of the “class”: “In the case of a lessor of real property, income included in gross income for the taxable year by reason of the termination of the lease.” The insuperable objection to allowance of this claim seems to us to be petitioner’s failure to show either that “it is abnormal for the taxpayer to derive income of that class” or that the amount received in the tax year was abnormally high. One or the other is necessary. See Rochester Button Co., 7 T. C. 529. For all that appears, payments for cancellation of subleases in the 32-story office building may have been a fairly regular occurrence, and the amount currently received may not have been abnormally high. On this issue respondent is sustained. It is, finally, insisted by petitioner that borrowed capital may be increased to include the “debenture” discussed under the first issue. What we said there disposes of that contention, the issues being comparable, as is virtually conceded by petitioner. But, although not so presented by either party, it seems to us that equity invested capital may be correspondingly increased. In Broadxoay Corporation, cited supra, first issue, it was ruled that: * * * The present decision * * * requires the inclusion in equity invested capital of the value of the property paid in for the pseudo debentures as if such payment had been in form as well as substance paid in for preferred shares. [Emphasis added.] And respondent, in his deficiency notice, increased this amount from $200 to $52,500, apparently fixing that amount as the figure because “you have not established a value in excess of $52,500.00 for the property * * (Emphasis added.) Since the parties now agree that the equity turned in to the corporation for the issuance of its securities had a value of “at least $250,200,” it seems that an appropriate further adjustment should be made. Reviewed by the Court. Decision will he entered under Rule 50. “Although the obligations of the two taxpayers had only one striking difference, the noncumulative in one and the cumulative quality in the other of the payments reserved under the characterization of interest, the Tax Court « * * held that the payments under the former, the Kelley Company, case, were interest and under the Talbot Mills were dividends.” [326 U. S. 521, 523.]