The Schneider Lumber Company v. Commissioner. The Schneider Corporation v. Commissioner.
Schneider Lumber Co. v. Commissioner
Docket Nos. 50966, 50967.
United States Tax Court
T.C. Memo 1956-25; 1956 Tax Ct. Memo LEXIS 271; 15 T.C.M. (CCH) 120; T.C.M. (RIA) 56025; January 30, 1956
*271 Held: The shares of preferred debenture stock on which $5,000 was paid by each of the petitioners in the years 1948, 1949, and 1950 were representative of a proprietary interest and not evidence of indebtedness and the amounts so paid were distributions in the nature of dividends. Edgar W. Jones, Esq., Peoples Bank Building, Canton, Ohio, for the petitioners. Theodore E. Davis, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax of petitioners as follows: Docket
No.
Petitioner
Year
Deficiency
50966
The Schneider Lumber
Company
1948
$1,900.01
50966
The Schneider Lumber
Company
1949
2,353.28
50966
The Schneider Lumber
Company
1950
2,047.83
50967
The Schneider Corpo-
ration
1948
1,456.64
50967
The Schneider Corpo-
ration
1949
1,422.62
50967
The Schneider Corpo-
ration
1950
1,458.63
*272 Of the several adjustments made by respondent only one is in dispute. The issue in this proceeding is whether the distributions made by petitioners in the years 1948, 1949, and 1950 to the holder of their preferred debenture stock were payments of interest on an indebtedness within section 23(b), Internal Revenue Code of 1939 or whether they were distributions in the nature of dividends. Findings of Fact Some of the facts were stipulated and are incorporated herein by this reference. Petitioners, The Schneider Lumber Company and The Schneider Corporation (sometimes hereinafter referred to as the corporations), are Ohio corporations with their principal place of business in Canton, Ohio. Petitioners filed Federal income tax returns for the calendar years 1948, 1949, and 1950 with the collector of internal revenue for the eighteenth district of Ohio. Merlin R. Schneider operated as sole proprietor a retail lumber and storage business from 1933 to 1946 when he decided to incorporate his business. On June 18, 1946 and June 21, 1946, respectively, he organized The Schneider Lumber Company to engage in the general wholesale and retail lumber and construction business and The *273 Schneider Corporation to engage in the business of holding, renting, and managing improved real estate. The corporations were so engaged in the years here involved. Each corporation was authorized to issue 1,000 shares of common stock and 1,000 shares of five per cent cumulative preferred debenture stock. On June 24, 1946 in consideration of the transfer to it of the following property belonging to the proprietorship The Schneider Lumber Company issued to Merlin R. Schneider, its president, all of its common stock at a stated value of $1.00 per share and all of its five percent cumulative preferred debenture stock at a par value of $100 per share: Cash
$ 21,100.00
Trade Accounts Receivable
49,631.43
Inventory
31,016.21
Ohio Sales Tax Stamps
392.90
Furniture & Fixtures
2,503.70
Machinery
5,664.86
Trucks and Autos
6,904.89
Total
$117,213.99
Reserve for Depreciation
Furniture and Fixtures
$1,322.51
Machinery
3,234.13
Trucks and Autos
6,845.60
Reserve for Taxes
2,843.66
Reserve for Old Age Bene-
fit Fund
201.94
Reserve for Unemployment
Insurance
362.17
Reserve for Income Tax
Withheld
699.84
Total Reserves
$ 15,509.85
$101,704.14
*274 Similarly, on June 25, 1946 in consideration of the transfer to it of the following property belonging to the proprietorship The Schneider Corporation issued to Merlin R. Schneider, its president, all of its common stock at a stated value of $1.00 per share and all of its five per cent cumulative preferred debenture stock at a par value of $100 per share: Notes Receivable
$ 10,013.41
Mortgage Notes Receiva-
ble
32,620.07
Property - 1400 Fifth
Street S.W.
3,666.65
Property - Fulton Road
N.W.
18,000.00
Property - 1405 Fifth
Street S.W.
1,730.43
Property - 415 Railroad
Avenue N.W.
2,000.00
Property - 1413 West
Tusc. Street
28,500.00
Property - Lumber Sheds
6,382.32
Property - Storage &
Mill Building
54,439.98
Elevator
1,666.67
Stocker
875.00
Sprinkler equipment
806.00
Electric sign
492.73
Lot - Sixth & Wertz
Street S.W.
1,353.45
Lots - Penn Place N.E.
416.67
Lots - Sippo Lake
625.00
Lots - Glenwood
3,657.50
Total Assets
$167,245.88
$167,245.88
Reserve for Depreciation
Property - 1400-5th St.
S.W.
533.35
Property - 1405-5th St.
S.W.
1,043.85
Property - Fulton
Road N.W.
2,266.70
Property - 415 Railroad
Ave.
33.32
Property - 1413 W.
Tusc. St.
3,237.50
Property - Lumber
Sheds
3,102.72
Property - Storage &
Mill Bldg.
26,036.30
Electric Sign
492.73
Elevator
1,462.94
Sprinkler
725.40
Stoker
875.00
Total Depreciation
$ 39,809.81 7
Contingent Profit &
Loss
1,361.04
41,170.85
$126,075.03
*275 The assets above described were transferred to each corporation at the values at which they had been carried on the books of the proprietorship prior to transfer. Upon the issuance of the five per cent cumulative preferred debenture stock those shares were credited along with the common stock to the capital stock account upon the books of each petitioner. The outstanding shares of common and debenture stock were also set forth under "capital stock" in the certified balance sheets of each petitioner and in the balance sheets reflected in Schedule L of their respective corporate income tax returns for the years 1948, 1949, and 1950. On the reverse side of the certificates of preferred debenture stock issued by each corporation it was stated that the holders thereof shall be entitled to receive "when and as declared by the Board of Directors of the Corporation, cumulative interest at the rate of $5.00 per share per annum," before any dividends on the common shares shall be paid; that the failure of the corporation to pay the aforesaid interest for a period of two years shall entitle the owners of the stock to declare the principal amount of such stock to be due and payable and to *276 institute action against the corporation to recover the par value of the shares and the accumulated interest thereon; that the corporation agrees to redeem or purchase the shares of preferred debenture stock for its par value of $100 plus the accrued and unpaid interest thereon on January 1, 1977; that in the event of dissolution, liquidation or winding up of the corporation the par value of the stock and all accrued and unpaid interest thereon shall be paid before any payment shall be made to the holders of the common stock; that the holders of the preferred debenture stock shall not be entitled to further participation in any distribution of the assets or funds of the corporation after payment of the aforesaid preferential amounts; that all general creditors of the corporation shall rank superior to the holders of the preferred debenture stock in payment of their several claims; that the preferred debenture shares may be redeemed by the corporation in whole or in part at any time for $105 per share plus any accumulated and unpaid interest thereon or they may be purchased by the corporation for the purpose of, or in anticipation of redemption for not more than the redemption price *277 thereof; that the holders of the preferred debenture stock shall have no voting power; and that the corporation shall not unless authorized by the consent of a majority of the preferred debenture shareholders create or assume any indebtedness payable more than twelve months from date of issue or encumber any of its property by mortgage, lien, or other means. No security for the payment of the par value of the shares of preferred debenture stock was provided or given by the corporations to Merlin R. Schneider, the holder thereof. The net earnings (before Federal income taxes and after deduction of the $5,000 distributions) for the corporations in the years in question are as follows: The Schneider
The Schneider
Year
Lumber Company
Corporation
1948
$124,224.19
$5,310.32
1949
75,576.73
3,183.92
1950
83,060.35
6,118.05
Disbursements in the total amount of $5,000 per year were made by each of the petitioners from time to time, pursuant to resolutions of their respective boards of directors, during the years 1948, 1949, and 1950 to Merlin R. Schneider, the holder of the outstanding preferred debenture stock of each corporation. The amounts so disbursed *278 were claimed by petitioners as deductions for interest in their respective Federal income tax returns for the years 1948, 1949, and 1950. Respondent has disallowed these deductions and has determined that the amounts so claimed are in reality distributions in the nature of dividends. The shares of preferred debenture stock on which $5,000 was paid in each of the years 1948, 1949, and 1950 by each of the petitioners were representative of a proprietary interest and not evidence of an indebtedness and the amounts so paid were distributions in the nature of dividends. Opinion The only question before us is whether the payments by petitioners in the years 1948, 1949, and 1950 to the holder of their preferred debenture stock were payments of interest on an indebtedness within the meaning of section 23(b), Internal Revenue Code of 1939, or whether they were distributions in the nature of dividends. In dealing with the kind of question presently before us the courts have not developed any comprehensive rule of general application, being content to decide each case on its own peculiar facts. They have, however, considered certain factors, none of which, by itself, is necessarily decisive *279 in all cases. Estate of Herbert B. Miller, 24 TC - (filed August 23, 1955), (on appeal C.A. 9); Gooding Amusement Co., 23 T.C. 408 (on appeal C.A. 6); Ruspyn Corporation, 18 T.C. 769; New England Lime Co., 13 T.C. 799; Charles L. Huisking & Co., 4 T.C. 595; Crawford Drug Store, Inc. v. United States, 220 Fed. (2d) 292 (C.A. 10) March 15, 1955); see generally Note, Thin Capitalization & Tax Avoidance, 55 Col. Law Rev. 1054 (1955). Some of the factors considered are the name given to the instrument, the presence or absence of a fixed maturity date; the source of the payments; the status of the holder of the instrument, that is, whether superior to or subordinate to other creditors of the corporation; and whether the instrument carries with it any right to participate in the management of the corporation. There are several factors in the instant case which when considered alone are favorable to petitioners' claim that the preferred debenture stock is representative of an indebtedness rather than of a proprietary interest. These elements, however, lose their luster when considered in light of other facts *280 and circumstances. The payments in question have been designated "interest." It is well settled that nomenclature is not conclusive, Jewel Tea Co. v. United States, 90 Fed. (2d) 451; that which is called "interest" may actually be a "dividend" and vice versa. Petitioners have placed particular emphasis on the fact that the certificates of preferred debenture stock provide for the redemption of the outstanding shares on January 1, 1977. Notwithstanding that the presence of a maturity date is indicative of an indebtedness, it is not decisive since it is not unusual for preferred stock to have a maturty or retirement date. Charles L. Huisking & Co., supra; Crawford Drug Stores, Inc. v. United States, supra; Commissioner v. Meridian & Thirteenth Realty Co., 132 Fed. (2d) 182. Similarly, petitioners gain naught from the provisions that the debenture stock is preferred as to common stock upon the liquidation or termination of the corporation; that the holders of the debenture stock have no right to vote; and that the corporation is unable to incur indebtedness payable more than twelve months from date of issue or encumber its property. *281 These features are common characteristics of preferred stock. (1) Mullin Building Corporation, 9 T.C. 350, affd. 167 Fed. (2d) 1001; (2) Charles L. Huisking & Co., supra; Verifine Dairy Products. Corporation of Sheboygan, 3 T.C. 269; H. P. Hood & Sons, 141 Fed. (2d) 467; (3) McCoy-Garten Realty Co., 14 B.T.A. 853. Likewise, the significance attributed by petitioners to the right of the holders of the preferred debenture stock to sue upon default in interest payments for more than two years appears unwarranted when it is noted that there is identity of ownership of the outstanding shares of common and debenture stock. It is unrealistic to ascribe to the holder of the debenture stock any intention ever to enforce payment if it would place the corporation in jeopardy or cause it to borrow from other sources. Such a course would not be in conformity with reason or sane business practice since it would be injurious and detrimental to himself as holder of the common stock. See Mullin Building Corporation, supra, and Gooding Amusement Co., supra. We find particularly significant the *282 fact that the preferred debenture stock is unsecured and is subordinate to the claims of the general creditors of the corporation. Cf. Charles L. Huisking & Co., supra.While not conclusive these factors strongly indicate that the holder of the preferred debenture certificates shared in the risk of the business in a manner compatible with the status of a stockholder than a creditor. Further, the certificates provide that the holder thereof "shall be entitled to receive when and as declared by the Board of Directors of the Corporation, cumulative interest at the rate of $5.00 per share per annum." Such provisions are not characteristic of debt instruments but rather are common provisions of cumulative preferred stock certificates, the word "dividend" ordinarily being used instead of "interest." Cf. Verifine Dairy Products Corporation, supra.It is a mark of cumulative preferred stock that neither the failure of earnings in any particular year nor the absence of a declaration by the board of directors in years when there are earnings, will prevent preferred dividends from accruing and becoming owing to the holder of such stock. See Johnson v. Lamprecht, 133 *283 O.S. 567, 15 N.E. (2d) 127; Dayton & U.R. Co. v. Shoemaker, 3 O.C.C. 473. That this construction may render these provisions contrary to Ohio State law, as petitioners contend, is in our view without significance for Federal tax purposes except as it would have evidentiary value as to the intention of the parties at the time the certificates were issued. Cf. Verifine Dairy Products Corporation, supra; United Mercantile Agencies, Inc.23 T.C. 1105 (on appeal C.A. 6). In our opinion the intention of the parties indicates that the debenture stock was stock rather than debt. It was called stock; it was carried on petitioners' books and certified balance sheets as capital and so represented to the public. See Mullin Building Corporation, supra; Crawford Drug Store, Inc. v. United States, supra.Petitioners also treated it as part of their capital structure in their income tax returns. See Golden Belt Lumber Co., 1 T.C. 741. Moreover, the transaction lacks the elements of a loan. No capital in excess of that invested in the proprietorship was invested in the petitioners. Indeed, each petitioner *284 was given but a portion of the proprietorship assets. The absence of a true borrowing element is not decisive but such absence under certain circumstances is indicative of a stock interest rather than debt. Cf. Mullin Building Corporation, supra.
Petitioners claim that the preferred debenture stock was issued to satisfy Merlin Schneider's desire for an interest in the businesses which he could sell when in need of cash without the risk of losing control of the companies and which could be given to his children should he so desire, also without danger of losing control of the corporations. This desire is accomplished as fully by treating the debenture stock as an investment creating a proprietary interest as by treating it as evidence of debt. Petitioners also argue that their initial financial structure reveals no excessive ratio of debt to stock. However, the debtstock ratio urged by petitioners is not supported by the evidence. The evidence offered by petitioners is insufficient to establish that the assets transferred to them had fair market values in excess of the values at which they were carried on the books of the proprietorship. After considering all the *285 pertinent facts we are convinced that the preferred debenture stock was capital stock rather than indebtedness. Accordingly, we hold that the payments in question were not interest payments within the meaning of section 23(b), Internal Revenue Code of 1939, but were distributions in the nature of dividends. Decisions will be entered under Rule 50. *
Footnotes
*. Pursuant to an Official Order of the Tax Court, dated March 2, 1956, and signed by Judge Bruce, this sentence was amended by substituting "under Rule 50" for "for the respondent".↩